IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| CHRISTOPHER W. CASTLE, | Civ. No. 6:23-cv-01217-AA |
| Plaintiff, | **OPINION & ORDER** |
| vs. | |
| ST. CHARLES MEDICAL SYSTEM, INC., | |
| Defendant. | |

AIKEN, District Judge:

This case comes before the Court on a Motion for Summary Judgment, ECF No. 21, filed by Defendant St. Charles Medical System. For the reasons below, the motion is GRANTED, and the case is DISMISSED.

LEGAL STANDARD

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Rather, it must view the evidence in the light most favorable to the non-movant and

draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001).

"When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325)).

Under Rule 56(e), if the nonmovant "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact[,]" the court may "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e). A court may not grant an unopposed summary judgment motion by default but must determine whether the movant is entitled to the motion. *See Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) (so explaining).

DISCUSSION

Self-represented Plaintiff Christopher W. Castle alleges that Defendant violated the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd(a)–(e), by denying Plaintiff emergency medical screening and failing to provide stabilizing treatment on Plaintiff's first visit to Defendant's Emergency Department ("ED"); by failing to provide stabilizing treatment on Plaintiff's second

ED visit; and by discharging Plaintiff on the second visit without providing stabilizing medical treatment. *See* First Am. Compl. ("FAC"), ECF No. 18.

The EMTALA, known as the "Patient Anti-Dumping Act" was enacted "to ensure that all individuals, regardless of their ability to pay, receive adequate emergency medical care." *Bryant v. Adventist Health System/West*, 289 F.3d 1162, 1165 (9th Cir. 2002). EMTALA does not establish a federal medical malpractice cause of action, nor does it establish a national standard of care. *Id.* at 1166; *Baker v. Adventist Health, Inc.*, 260 F.3d 987, 993 (9th Cir. 2001). Instead, "EMTALA imposes two duties on hospital emergency rooms: a duty to screen a patient for an emergency medical condition, and, once an emergency condition is found, a duty to stabilize the patient before transferring or discharging him." *Baker*, 260 F.3d at 992; *see* 42 U.S.C. § 1395dd(a), (b).

Defendant asserts that it is entitled to summary judgment on the EMTALA claims because Plaintiff fails to provide evidence to support his claims and thus fails to "create an issue of material fact." Def. Mot. at 5, 6, ECF No. 21. Plaintiff also failed to respond to Defendant's motion despite given extra time to do so. *See* ECF No. 26. The Court reviews Plaintiff's claims to determine whether Defendant is entitled to summary judgment.

I.    *EMTALA Medical Screening Claim*

Plaintiff alleges that, on August 21, 2021, Defendant violated EMTALA by denying him "emergency medical screening" at its Redmond ED "for severe pain from what he believed to be a broken leg." FAC ¶¶ 27, 31. Plaintiff also alleges that

Page 3 – OPINION AND ORDER

Defendant disparately applied its screening policy to Plaintiff. *Id.* at 4. Plaintiff alleges that he was denied treatment because he refused to wear a mask. *Id.* at ¶¶ 19, 22. Plaintiff alleges that after he returned home, he experienced "constant, severe pain" and that he was "unable to provide himself with food or drink[,]" or "take care of personal hygiene." *Id.* at ¶¶ 32–38. He alleges that he was later found to have a broken leg. *Id.* at ¶ 45.

EMTALA's medical screening requirement provides that if any individual comes to a hospital emergency department and a request is made "for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department." 42 U.S.C. § 1395dd(a). "[A] hospital satisfies EMTALA's 'appropriate medical screening' requirement if it provides a patient with an examination comparable to the one offered to other patients presenting similar symptoms[.]" *Jackson v. East Bay Hosp*, 246 F.3d 1248, 1256 (9th Cir. 2110). "Evidence that a hospital did not follow its own screening procedures can support a finding of EMTALA liability for disparate treatment." *Baker*, 260 F.3d at 994 (quoting *Battle v. Mem. Hosp.,* 228 F.3d 544, 558 (5th Cir.2000)).

Here, Plaintiff alleges that on August 21, 2021, Defendant refused to screen him because he declined to wear a mask. The Court takes judicial notice that at that time, during the COVID-19 pandemic, the Oregon Health Authority had just issued a rule requiring providers and patients at Oregon health care facilities to wear masks. *Former* OAR 333-019-1011 (Aug. 20, 2021); *see also* Scott Decl., ECF No. 22-2.

Page 4 – OPINION AND ORDER

Defendant provides the ED Record from August 21, 2021. *See* Scott Decl., Ex. 1, ECF No. 22-1. That record reveals that at 23:43 an RN attempted to bring patient to an exam room for screening: "A mask was obtained and [patient] was asked to please wear the mask. [Patient] becomes angry, wads the mask up and refuses to put it on, yelling that he will not wear a mask and that he is leaving." *Id.* At 23:45, the ED record reveals that an ED physician reported, "I signed up for [patient] when he checked in, however, I never had opportunity to evaluate him. Apparently, when he was asked to wear a mask he became very upset, began yelling and then left the ED. He eloped prior to my having a chance to perform [an exam]." *Id.* At 23:51, the record states, "Multiple attempts were made to bring [patient] back to be seen by the provider, he continues to refuse. He wheeled himself out of the lobby in the [wheelchair]." *Id.*

Plaintiff does not dispute these facts and offers no evidence to show that his departure was not voluntary. By leaving the ED, Plaintiff deprived himself of the opportunity to be screened. Defendant is entitled to summary judgment on this EMTALA claim.

II.     *EMTALA Stabilizing Treatment Claim*

Plaintiff alleges that Defendant violated EMTALA by failing to provide stabilizing treatment on (1) the August 21, 2021, ED visit; (2) the August 26, 2021, ED visit; and (3) upon discharge from the August 26, 2021, ED visit.

EMTALA's stabilizing treatment requirement provides that if any individual comes to a hospital and is determined to have an emergency medical condition, the

hospital must provide "within the staff and facilities available[,]" such "medical examination and such treatment as may be required to stabilize the medical condition[.]" 42 U.S.C. § 1395dd(b)(1)(A). An "emergency medical condition" is defined as "acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected" to (i) place the individual's health in "serious jeopardy;" or (ii) seriously impair bodily functions; or (iii) result in "serious dysfunction of any bodily organ or part[.]" 42 U.S.C. § 1395dd(e)(1)(A). Stabilizing medical treatment is treatment "necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result[.]" 42 U.S.C. § 1395dd(e)(3)(A); *see also Eberhardt v. City of Los Angeles*, 62 F.3d 1259 n.3 (9th Cir. 1995).

### A.   *Failure to Stabilize on August 21*

As to the ED visit on August 21, 2021, Plaintiff alleges that Defendant violated EMTALA by failing to provide stabilizing care and that he suffered severe pain as a result. FAC ¶¶ 32–38. As the Court explained above, Plaintiff does not dispute that, on August 21, 2021, he declined treatment by leaving the ED and provides no facts to show that his departure was not voluntary. EMTALA's stabilization and transfer provisions are "triggered only after a hospital determines that an individual has an emergency medical condition." *Eberhardt*, 62 F.3d at 1259 (quoting *Gatewood v. Washington Healthcare Corp.*, 933 F.2d 1037, 1041 (D.C. Cir. 1991)). Here, Defendant was not able to examine Plaintiff to determine whether he had an emergency medical condition because Plaintiff left the ED. The EMTALA

requirement to provide stabilizing treatment was thus not triggered. Defendant is entitled to summary judgment on this EMTALA claim.

    B.    *Failure to Stabilize on August 26*

Plaintiff returned to the ED five days later, August 26, 2021, to request treatment for a broken leg. FAC ¶¶ 41–43. Plaintiff alleges that Defendant violated EMTALA by failing to provide stabilizing care and that he suffered severe pain that "caused irreparable harm[.]" *Id.* at ¶¶ 50–60.

Without providing his ED record, Plaintiff excerpts the following statements allegedly from that record: "Plaintiff reported that he had stepped off a log five days prior, [sic] and heard a loud pop and felt the immediate onset of immense pain[,]" *id.* at ¶ 43, "Plaintiff reported his pain at 9/10 in severity," *id.* at ¶ 44, an "x-ray confirmed a fractured tibia and fibula," *id.* at ¶ 45, ED physician Dr. Tietz "explained to Plaintiff that the Defendant had discussed Plaintiff's injury with Dr. Roth, orthopedist on-call[,]" *id.* at ¶ 46, "[a] right-sided long-leg splint with lateral stirrups was placed by the tech[,]" *id.* at ¶ 63, "[n]eurovascular and position checked by [Dr. Tietz himself] afterward and found to be satisfactory[,]" *id.*, "pain medicine was administered to Plaintiff," *id.* at 52, and Plaintiff was then "set to Discharge," *id.* at ¶ 62.

Despite receiving the leg splint and pain medication, Plaintiff alleges that he was denied stabilizing treatment. *Id.* at 6. Plaintiff bases his claim on the fact that he requested pain medication three times before he received it, *id.* at ¶¶ 48, 50–52, and even after he received it, his "pain score was still 9/10[,]" *id.* at ¶ 53. Plaintiff alleges that Defendant "withheld treatment from Plaintiff, prolonging his experience

Page 7 – OPINION AND ORDER

of severe pain[,]" which "caused irreparable harm" to Plaintiff. *Id.* at ¶¶ 59–60. Plaintiff also provides a medical record statement from orthopedic surgeon Dr. Roth dated September 2, 2021: "I explained to [Plaintiff] that his right ankle is unstable and needs fixation. He understands that he needs operative intervention." *Id.* at ¶ 66.

Here, Plaintiff alleges that Defendant examined and administered treatment for Plaintiff's right leg/ankle injury. After consulting an orthopedic surgeon, Dr. Roth, the ED physician applied a right leg splint and administered pain medication. Because Plaintiff provides Dr. Roth's statement from a record dated September 2, 2021, the Court infers that the Plaintiff was instructed to follow-up with or was provided with a follow-up appointment with Dr. Roth on September 2, 2021, one week after his ED visit.

Plaintiff fails to provide evidence that he was denied stabilizing treatment on the August 26 ED visit. First, Plaintiff fails to provide the ED records and the orthopedist medical records from which he excerpts. Second, even assuming that Plaintiff's injury constituted an emergency medical condition that could reasonably be expected to place him in "serious jeopardy," or seriously impair bodily functions, or result in "serious dysfunction of any bodily organ or part," 42 U.S.C. § 1395dd(e)(1)(A), Plaintiff provides no evidence that the treatment Defendant provided was not stabilizing or was otherwise insufficient under EMTALA. Third, Plaintiff fails to provide evidence that other care for Plaintiff's condition was available at the ED and should have been provided instead.

Page 8 – OPINION AND ORDER

### C.     *Failure to Stabilize Before Discharge on August 26*

Plaintiff alleges that Defendant failed to provide stabilizing treatment on August 26, 2021 "prior to transfer." FAC at 8.

EMTALA requires hospitals to provide stabilizing treatment for "emergency medical conditions" before a patient is transferred. 42 U.S.C. § 1395dd(b)(B). EMTALA's transfer provision applies to patients with emergency medical conditions that have not been stabilized. *Bryant*, 289 F.3d at 1169. "Transfer includes both *discharge* and movement to another facility." *Id*. at 1165 (emphasis added); 42 U.S.C. § 1395dd(e)(4).

Here, Plaintiff presumably refers to his discharge from the ED on August 26, 2021, which EMTALA considers a "transfer." This claim is duplicative of Plaintiff's claim that the ED failed to provide stabilizing treatment on that date and is likewise without factual support.

In sum, Plaintiff is the nonmoving party and has the burden of proof to support his claims. Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Here, Plaintiff fails to provide the medical records from which he draws excerpts. He also fails to provide evidence to show that the treatment he received— the leg splint, which resulted from the ED physician's consult with an orthopedist, pain medication, and a follow-up appointment with that orthopedist—was not stabilizing treatment under EMTALA or that other treatment was available and

Page 9 – OPINION AND ORDER

should have been administered instead. Because Plaintiff fails to provide evidence to support the essential elements of his claims, Defendant is entitled to summary judgment.

## CONCLUSION

For the reasons explained, Defendant's Motion for Summary Judgment, ECF No. 21 is GRANTED. The case is DISMISSED. Final judgment will be entered accordingly.

It is so ORDERED.

DATED this 19th day of March 2025.

           /s/Ann Aiken
           ANN AIKEN
           United States District Judge